Good morning, Your Honors, and may it please the Court, Ian Silberberg on behalf of the petitioner in this matter, Mr. Jiminez-Ochoa. Mr. Jiminez-Ochoa is a lawful permanent resident of the United States and he was such for five years and then got convicted in the state of Nevada for a drug paraphernalia offense. Tell me, he got his lawful permanent residence when he was, what, 12 years old? How did that come about? As I sit here, Your Honor, I'm not sure and I didn't handle that part of the case, but I believe that he got that, I believe it was through amnesty and probably through his parents, but I don't have that right in front of me. I apologize, Your Honor. Prior to obtaining seven years, he got So why is seven years, it's still needed for an adjustment or? Well, as a lawful permanent resident, when you get a certain criminal convictions, you can request what's called cancellation of removal for certain permanent residents. But that takes the seven years. And it takes five years being lawfully admitted and then seven years being admitted in any status is the phrase, and that's really the critical phrase that this appeal concerns. The term, the phrase admitted in any status is used in many parts of the Immigration Act, and certainly it's desirable to have some consistency in how those phrases are used. But in the context of cancellation of removal, I believe it becomes difficult to give that same meaning to the phrase admitted in any status, and here's why. For somebody who's completely illegal in this country, who then gets put in removal proceedings, they have to prove ten years of physical presence in the United States. Now, then we take cancellation of removal for a permanent resident, somebody who's gone through the process, showed themselves to be worthy of becoming a permanent resident of the United States, they commit the same crime, put in removal proceedings, and they in essence have a higher bar based on the board's interpretation of the phrase admitted in any status, which according to this Court and any other court that's had the opportunity to review it, admitted in any status does not mean illegal. And that's certainly what I've argued in my brief, that it should in this context include illegal status, because otherwise what we're doing is we are treating lawful permanent residents of the United States less favorably than permanent resident than permanent than, excuse me, than permanent residents of the United States. Is there any case law that would support that proposition? Unfortunately, there isn't. And I'm asking the Court to look beyond that, certainly for this. I would argue that it's an equal protection violation. And I didn't put that exact term in my brief. I argued that what I argued was the Court's decision that said we should not be treating lawful permanent residents less favorably than non-lawful permanent residents for purposes of the immigration laws. But in the case of Sodomas v. McMahon, 767 F. 2nd, 1456, that case talked about the skidmore deference that the Court pays to the administrative decisions of the Board of Immigration Appeals. And while the Court does have to give some deference when there's an equal protection violation, I would urge the Court that that deference need not be given. And the standard that we would have to show here is that the distinction between the lawful permanent residents on one hand and the permanent residents and the illegals on the other hand for purposes of cancellation of removal is wholly irrational. And I would submit to the Court that that distinction is wholly irrational. To hold a lawful permanent resident to a higher standard to obtain relief from his removal than somebody that's a permanent resident is wholly irrational. The second part of my brief relates to whether Nevada's statute relating to paraphernalia is a drug-related offense. Now, this Court has spoken extensively on that in the Lulee decision and other decisions as well. And I know I have a very large uphill battle on this case, on this part of the case. What I didn't put in my brief, and I wish I had, but sometimes my ideas pop in after the brief is filed, what I believe the problem is with the Nevada statute is that it infringes on protected speech. When you look at the long laundry list of items that can be considered paraphernalia, we have such things as the and kits for growing, all of which presumably have some sort of written materials that say how to use it. There's any number of magazines out there that talk about cultivation of marijuana and other items which conceivably could fall within the ambit of NRS 453.554 relating to drug paraphernalia. Now, I would submit that it's vague. And even though it's not in my mind that the court can sui sponte consider this issue inasmuch as it's a First Amendment very serious issue. Well, that's not quite fair to the other side. I certainly understand, Your Honor, but I feel I had to make this argument. And if the court would want to order further briefing on that issue, if the court deems it necessary, I'd certainly be willing to do that. And I understand, Your Honor, that it isn't fair to the government at this stage. I'm not understanding why you believe it's a First Amendment matter. Thank you, Your Honor. When the court looks at the Nevada revised statute in question relating to paraphernalia, 453.554, there are 11 listed items there that are considered paraphernalia. And the first few of those talk about kits, manufacturing kits for the preparation. And my guess is that they have some sort of instructional manual, conceivably, that would talk about how to use these items for cultivation or what. That's an argument of why this should not be classified among those items. But I can't see how that's a First Amendment matter. Well, because, Your Honor, if it presumably anybody that writes a magazine, an article or a book about how to do these things listed in 453.554 could be in violation of the statute just by their speech. And that's why I believe it's a First Amendment violation. In the case of Grainard v. Rockford, which is a U.S. Supreme Court case, 408 U.S. 104, there's three factors that have to be met. One is, does the law impinge on First Amendment? Does it fail to provide notice of the prescribed conduct? And does it allow unfettered discretion in the trier of fact to determine if there was, in fact, a violation? You should really raise these matters in your brief. Let me ask you some practical questions. How old is your client today? Your Honor, he's in his 30s. I don't have his exact age. He's in his 30s. And how long has he been in the country? I believe since he was 12 years old. So he went to elementary school here? He has been in the country since he was maybe four years younger. He got his status when he was 12. So he was probably here when he was a little bit younger. He attended elementary school here? That's my understanding, yes, Your Honor. High school? I believe so. Is he married? That I do not know. You don't know? No. Do you know if he has any children? No, because that wasn't relevant to the relief that was being sought on his behalf in the immigration court, which I was not a part of. But you say no, do you mean he does or he doesn't have children? No, I don't know that he has children, Your Honor. I thought he had a son here. He very well could, Your Honor. He very well could. But then again, it's Some things in the record indicates he has a son here, among many other family members. Yes, he does have extensive family members here and would otherwise have been eligible for cancellation of removal for permanent residents, none of which is contingent on having family here. Cancellation of removal for certain non-permanent residents, it does become relevant what family you do have in the country. You know, the more you know about your client, the better you can present a case to us. I certainly understand and I appreciate that, Your Honor. Nothing, unless the Court has any further questions. I have no questions of you, Counsel. Thank you. It seems to me from the record that there is evidence that he has a U.S. citizen child. That's what my notes show.  I believe he does have a child. I do remember seeing in the record something that indicates, but I'm not positive. Well, I think I wouldn't have written it down unless it was in the record. Right. May it please the Court? My understanding is that he came here when he was 8 years old. Is that correct? Yes, that sounds right. I'm Tracy McDonald from the United States Department of Justice. I represent the Respondent, Attorney General Eric Holder. The HC in this case properly determined that Petitioner is ineligible for cancellation of removal. Petitioner was required to demonstrate, among other things, that he resided in the United States continuously for seven years after having been admitted in any status. In a matter of blankest law, the Board held that status is a term of art used in immigration law, which denotes that someone who possesses a certain legal standing within the United States. The use of the word, the Board goes on to say that the use of the word any to modify the word status indicates that Congress intended non-immigrants as well as immigrants to be included. Petitioner conceded he was in the country without any status when he represented that he had no documentation that would show that he was here with any kind of status. Therefore, he did not begin to accrue a continuous residence until he became a lawful permanent resident on June 27, 2000. Why is that? Kent, if he could prove that he came when he was younger, isn't that good enough? Because what we're looking at, did he have seven years? The difference is that he was a lawful permanent resident and cancellation for removal for a lawful permanent resident is different. Does it require seven years in lawful status? In lawful status, yes. That the government would argue, yes. Where do you find that in the statute? You don't. Asking for the court to show deference to the Board's definition of any status. As far as petitioner's conviction for possession of drug paraphernalia, I believe this court's decision in Lulay indicates that his conviction under the Nevada statute, which was very closely similar to the, I believe it was an Arizona statute in Leloo. Therefore, the government will argue that the conviction, that this petitioner's conviction for possession of drug paraphernalia does constitute a conviction related to a controlled substance. Again, petitioner failed to demonstrate that he resided in the United States continuously for seven years after he was admitted in any status. This fellow has quite a connection to this country, correct? Yes, he's been here quite a while. Is he a candidate for prosecutorial discretion under the Attorney General's sort of? That Morton memo? Yes, I'm familiar with that. He seems to, you know, when you look at the criteria and you look at what he did, admittedly he has this prior conviction, but it's not the most serious conviction. You're right. However, it's a drug paraphernalia. Right. What was it, a pipe? Yes. I mean. I believe the statute is. He's got a child here, he went to school here. Unfortunately, this isn't a case that would fall under prosecutorial discretion based on the criminal conviction. I understand. I agree with your honor that it's not a very serious conviction, however, is a criminal conviction. I thought under the policy, they looked at the conviction. They looked at the nature of the conviction. Yes, that is one. In this case, we actually did a thorough, had to go through the cases, and this case just was not one that was chosen for prosecutorial discretion. Was it reviewed with that in mind? Excuse me? Was this particular case reviewed with whether the Morton memo should have applicability? I don't think so. So we don't know. Right. You're right. Judge Hugg, you had a question there? I was going to point out that, like Judge Fletcher, that this case was started before that memo came out. Correct. I was wondering if it had been reviewed since the memo came out as to whether to continue prosecuting it. It seems like it's an ideal one not to, with all the time that he spent here, with the people that are here, with the minor conviction of Pike, it seems like this would fit exactly within what the attorney general's memo would say. It's my understanding that it has been reviewed and considered for prosecutorial discretion. I am not positive whether or not it has been chosen. When was it reviewed? That I don't know. It didn't play a role. Was it after the memo came up? Yes. Do we have some way of asking the attorney general, number one, whether this case has been reviewed? And number two, if it hasn't been reviewed, can it be given consideration? Yes. I'm sure there's a procedure I could go through to find that out for Your Honor. Yeah. It seems, as Judge Paez has noted, it's a case where he really, his whole life, since he was eight years old, was here in the United States and he has parents here, he has a child here, and to be in possession of a pipe seems like a pretty minor, a minor offense. There are no other questions? No. Thank you. Thank you, counsel. The matter is submitted.
judges: Hug, Fletcher, Paez